<u>UNITED STATES DISTRICT COURT</u>

<u>DISTRICT OF COLUMBIA</u>

OSCAR DANTZLER                      CIVIL ACTION 1:20-CV-01629
      Plaintiff

VERSUS                            JUDGE TREVOR N. MCFADDEN

TANGIPAHOA PARISH SCHOOL BOARD
ET AL
      Defendants
**************************************************************************

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

NOW INTO COURT, through undersigned counsel, come Defendants, Tangipahoa Parish School Board, Robin Adams, Sandra Bailey Simmons, Randy Bush, Rose Dominguez, Brett Duncan, Jerry Moore, Janice Fults Richards, Tom Tolar, Glenn Westmoreland, Byron Hurst, Ronald Genco, Gavin Vitter, Byron Muse, Andrew Jackson, and Melissa Stilley (hereinafter after "School Board Defendants"), who hereby file this Memorandum in Support of its Motion to Dismiss.

This case involves claims brought against a Louisiana governmental entity, the Tangipahoa Parish School Board and several of its employees and officers. The *pro se* Plaintiff, Oscar Dantzler, (hereinafter "Plaintiff" or "Dantzler") in this matter, at all times, lived and worked in Louisiana. Plaintiff's causes of action involve alleged incidents that occurred while Dantzler was living in Louisiana and an employee of the Tangipahoa Parish School Board.

Dismissal is proper on several grounds. First and foremost, the Court lacks personal jurisdiction over the Tangipahoa Parish School Board and its employees and officers who are named defendants. Plaintiff cannot establish that the parties had any contact with the present forum and to maintain this action in this court would violate due process. Second, on the face of

the complaint, the complaint fails to state a cause of action. Specifically, Plaintiff fails to adequately plead a claim for discrimination. Plaintiff additionally alleges that the discrimination was continuing. However, the failure to promote a plaintiff is a discrete act. This Court routinely finds that Title VII procedural requirements must be followed for each instance of alleged discrimination. Plaintiff further fails to adequately plead any cause of action for gender discrimination or conspiracy.   Additionally, Plaintiff improperly sues board members, employees, and the Chief Desegregation Implementation Officer of the Tangipahoa Parish School Board in their individual capacity. Such individual capacity claims are improper.  Finally, Plaintiff vaguely alleges that he has a civil rights claim under the ongoing *Moore v. Tangipahoa Parish School Board,* United States District Court for the Eastern District of Louisiana, No. 65-15556. Specifically, he states, "Plaintiff strongly believes that he has a civil rights claim under the [sic] Joyce Marie Moore….", However, Plaintiff fails to allege that he complied with Order 866 of *Moore* which controls the hiring process for certain administrative positions.[1] For these reasons, and the reasons more fully outlined below, the complaint should be dismissed with prejudice.

The School Board Defendants further move the court to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because the aforementioned Defendants are not officers or employees of the United States or any agency under 28 U.S.C. § 1361. Therefore, a writ of mandamus cannot issue to Defendants.  For these reasons, as more fully outlined below, the School Board Defendants submit that dismissal of Plaintiff's Complaint is proper.

---

[1] See Order 866 attached hereto as Exhibit B.

## TABLE OF CASES

*Am. Farm Bureau v. U.S. EPA,*
121 F. Supp. 2d 84 (D.D.C. 2000) ................................................................. 21

*AMTRAK v. Morgan,*
536 U.S. 101 (2002) ..................................................................................... 15

*Atherton v. District of Columbia Office of Mayor,*
567 F.3d 672 (D.C. Cir. 2009) ................................................................ 18, 19

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
480 U.S. 102 (1987) ..................................................................................... 11

*Atlantigas Corp. v. Nisource, Inc.,*
290 F. Supp. 2d 34 (D.D.C. 2003) ................................................................ 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................... 14

*Bell v. Runyon,*
1997 U.S. Dist. LEXIS 10909 (D.D.C. July 16, 1997) ................................ 17

*Browning v. Clinton,*
352 U.S. App. D.C. 4, 292 F.3d 235, (D.C. Cir. 2002) ................................ 14

*Bryant v. Leavitt,*
No. 05-250 (GK), 2007 U.S. Dist. LEXIS 11768, 2007 WL 530021 ............ 17

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ..................................................................................... 11

*Busby v. City of Orlando,*
931 F.2d 764 (11th Cir. 1991) ..................................................................... 22

*Crane v. N.Y. Zoological Soc.,*
894 F.2d 454 (D.C. Cir. 1990) ....................................................................... 9

*Gorman v. Ameritrade Holding Corp.,*
293 F. 3d 506 ................................................................................................. 9

*Greer v. Bd. of Trs. of the Univ. of the D.C.,*
113 F. Supp. 3d 297 (D.D.C. 2015) ............................................................ 15

*Harding v. Gray,*
9 F.3d 150 (D.C. Cir. 1993) ......................................................................... 17

*Helicopteros Nacionales De Colom. v. Hall,*
466 U.S. 408 (1984) ....................................................................................... 9

*Hicks v. Fort Wayne Cmty. Schs,*
No. 08-2095 (JDB), 2009 U.S. Dist. LEXIS 151454 (D.D.C. Apr. 3, 2009) ...... 24

*Hoai v. Vo*,
   935 F.2d 308 (D.C. Cir. 1991) ................................................................ 18

*Howard v. Fenty*,
   580 F. Supp. 2d 86 (D.D.C. 2008) ........................................................ 20

*Howe v. Embassy of It.*,
   68 F. Supp. 3d 26 (D.D.C. 2014) ............................................................ 9

*Jung v. Assoc. Amer. Med. Coall.*,
   300 F.Supp.2d 199 (D.D.C. 2004) .......................................................... 9

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) .................................................................. 8

*McCreary v.*
   h, No. 04-0623 (PLF), 2005 WL 3276257, (D.D.C. Sept. 26, 2005) .............. 18

*\*Moore v. Tangipahoa Par. Sch. Bd.*,
   771 F. App'x 540 (5th Cir. 2019) ...................................................... 5,7, 8,16

*More v. Snow*,
   480 F. Supp. 2d 257 (D.D.C. 2007) ...................................................... 16

*Robinson v. Ashcroft,*,
   357 F. Supp. 2d 142 (D.D.C. 2004) ........................................................ 9

*Stevens v. Bd. Of Educ. Of Kent County*,
   70 F. Supp. 3d 566, (D.D.C. 2014) ........................................................ 15

*Second Amendment Found. v. U.S. Conf. of Mayors*,
   274 F.3d 521 (D.C. Cir. 2001) ................................................................ 9

*United States v. Choi*, 818 F.Supp.2d 79 (D. D.C. 2011) .......................... 21

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) .............................................................. 14

## I.      FACTUAL BACKGROUND

Plaintiff alleges in the Complaint that he is an employee of the Tangipahoa Parish School Board. Compl. at 4, ECF 1.  He is also a resident of the Parish of Tangipahoa, State of Louisiana. *Id.*  Plaintiff alleges that he applied for several positions with the Tangipahoa Parish School Board since October of 2018. *Id*. at 4.

Plaintiff specifically alleges that he applied for the Director of Transportation position and Field Coordinator positions.  *Id*. at 6. Importantly, as outlined by the U.S. Fifth Circuit in a 2019 opinion, the Director of Transportation position actually became available in 2016 and the hiring was completed in 2017.[2] However, Plaintiff fails to identify the specific dates of hire for the Field Coordinator Position in the complaint. The 2019 charge generally references the time period of October 2018 to February 2019. *Id*. at  32.

Dantzler further alleges that Superintendent Stilley had a conspiracy with the Governor of the State of Louisiana, John Bel Edwards. He asserts that Superintendent Stilley agreed to send campaign promotional materials to school employees in exchange for John Bel Edwards assurances that Plaintiff's Louisiana Commission on Human Rights and EEOC complaints would be dismissed. Compl. at 8. Dantzler alleges that he was a candidate in the 2019 governor's race and because of his presence in the race the Governor was forced into a second primary. Compl. at 11.

In the conclusion of his complaint plaintiff requests a writ of mandamus against all defendants. He specifically requests, "a Writ of mandamus ordering all the defendants, and their employees, agents to do what is required of defendants to do pursuant to the law and an order ordering for defendants not to continue this type of misconduct in the future." Compl. at 25.

---

[2] *See Moore v. Tangipahoa Par. Sch. Bd.*, 771 F. App'x 540, 542 (5th Cir. 2019).  The U.S. Fifth Circuit in 2019 examined in *Moore* the specific hire that Plaintiff also complains of in this case.

**B.  2019 Charge Alleging Race and Sex Discrimination and Retaliation**

On August 8, 2019, Plaintiff filed a Charge of Discrimination against the "Tangipahoa Parish School District" with the Louisiana Commission on Human Rights which was cross-filed with the U.S. Equal Employment Opportunity Commission. *Id.* at  32. In the 2019 Charge, Plaintiff checked the boxes marked "Race", "Gender", and "Retaliation." Plaintiff alleged in the 2019 Charge that he "applied for several promotional positions." He further stated that the dates discrimination took place were 10-1-2018 to 2-21-2019 and that such discrimination was a continuing action.  Plaintiff failed to allege any specific positions that he applied for in the 2019 Charge. *Id.*

On March 25, 2020, Plaintiff received a Notice of Suit Rights and Appeal from the Louisiana Commission on Human Rights ("LCHR"). *Id.* at  40. The LCHR issued the following determination: "Based upon its investigation, the LCHR is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge."

Plaintiff proceeded to file the instant law suit.  After the filing of this suit, the EEOC issued a Right to Sue Letter.[3]  The EEOC adopted the findings of the LCHR and stated that it was unable to conclude that the information obtained establishes violations of the statutes.[4]

**C. The Ongoing Desegregation Case**

In order to resolve the present claims, it is important for the Court to understand the history of the Tangipahoa Parish School Board. For more than fifty four years, the Tangipahoa Parish School Board has been a Defendant in the case of  *Moore v. Tangipahoa Parish School*

---

[3] See EEOC Letter attached hereto as Exhibit A.
[4] *Id.*

*Board,* United States District Court for the Eastern District of Louisiana, No. 65-15556, pending before the Honorable Ivan L. Lemelle.  The case was initially filed in 1965. In 1967, the Tangipahoa Parish School Board was ordered to desegregate and to submit a plan detailing its efforts toward complete desegregation.[5] The lawsuit lay dormant for several decades.

In January 2010, the Eastern District of Louisiana issued an order modifying the desegregation plan with regard to hiring procedures for all principal, supervisor and administrator positions (hereinafter referred to as "Order 866.")[6]  Order 866 provides certain hiring requirements in accordance with the parties' diversity goals.[7] Accordingly, at the time of Mr. Dantzler's alleged discrimination, the Transportation Department was required to remain racially un-identifiable in accordance with Order 866.  The Desegregation case remains ongoing as of the time of this filing.

In accordance with Order 866, a court-appointed Court Compliance Office ("CCO") is responsible for ensuring compliance with the court's desegregation order.[8] The CCO receives a list of names and the race of each applicant.  If the superintendent chooses not to recommend a black applicant because there is a more qualified applicant of a different race, then the superintendent must submit written reasons to the CCO and the Chief Desegregation Implementation Officers.[9]  The CCO notifies the superintendent if there are any objections from black applicants or if further investigation is needed regarding the hire for the subject position. Importantly, Dantzler fails to make any allegations in his complaint that he followed the procedures for objecting to the recommendation.

---

[5] See Order 866 attached hereto as Exhibit B and *Moore v. Tangipahoa Parish Sch. Bd.* 771 Fed Appx. 540, 542 (5th Cir. 2019).
[6] *Moore,* 771 Fed Appx. at 542.
[7] *Id.*
[8] *Id.*
[9] *Id.*

Regarding the Director of Transportation position that Dantzler alleges he applied for, the ultimate hire of the black male candidate was fully investigated in connection with a complaint lodged by a separate applicant. The U.S. Fifth Circuit examined the entire hiring process and concluded that the CCO investigated the hire and found that the TPSB acted in compliance with the hiring order. See *Moore v. Tangipahoa Parish Sch. Bd.* 771 Fed Appx. 540, 542 (5th Cir. 2019).

Specifically, the U.S. Fifth Circuit outlined that the hire of a qualified black applicant for the Director of Transportation position was proper. It was noted in the *Moore* appeal that the interview committee interviewed all qualified applicants and unanimously recommended a qualified black applicant to the superintendent. The superintendent then recommended the same qualified black male applicant to the TPSB Personnel Committee. As the hire was a black male, it is inconceivable that Dantzler, also a black male, was discriminated against based on his race and gender. Moreover, the entire process as outlined in Order 866 was followed in connection with the Director of Transportation position. Finally, the Director of Transportation position significantly predated Mr. Dantzler's attempt to run for Governor of the State of Louisiana in 2019 and the filing of this lawsuit in 2020.

## II.    LAW AND ARGUMENT

### A.  Rule 12(B)(2) Personal Jurisdiction Standard

Dantzler bears the burden of proof regarding whether or not this Honorable Court possesses personal jurisdiction over the School Board Defendants. *Robinson v. Ashcroft,* 357 F. Supp. 2d 142, 148 (D.D.C. 2004) citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003). *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017). In order to meet his burden, plaintiff must allege specific facts on which personal jurisdiction can be based.

*Robinson,* 357 F. Supp. 2d at 148.  *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).  Plaintiff is prohibited from relying on conclusory allegations. *Howe v. Embassy of It.*, 68 F. Supp. 3d 26, 27 (D.D.C. 2014); see also *Bigelow v. Garrett,* 299 3d 34, 44 (D.D.C. 2018). Additionally, plaintiff cannot "…aggregate allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Robinson,* 357 F. Supp. 2d at 148.  Where the Court is faced with a motion to dismiss for lack of personal jurisdiction, the court need not treat plaintiff's allegations as true. *Id.* Instead, the court may consider and weigh evidence including affidavits and other relevant matters. *Id.* and s*ee Jung v. Assoc. Amer. Med. Coall.*, 300 F.Supp.2d 199, 227 (D.D.C. 2004). Moreover, the plaintiff must allege specific facts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

### B.  This Court Should Dismiss the Complaint Against the School Board Defendants Under Rule 12(b)(2).

Dantzler does not allege any facts connecting Defendants with this jurisdiction. A court may exercise two forms of personal jurisdiction over a nonresident defendant: either general or specific. General jurisdiction exists where a nonresident defendant maintains sufficiently systemic and continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim in the particular case.  *See Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408, 414 (1984) (194).  The Court imposes a more stringent minimum contacts test than for specific jurisdiction. *Gorman v. Ameritrade Holding Corp.,* 293 F. 3d 506, 210 (D.D. Cir. 2002). No facts are alleged that the School Board Defendants have any contacts, much less continuous and systematic ones, with the District of Columbia. Instead, Dantzler vaguely alleges that, "All of the transactions and events related to the plaintiff's complaint occurred in and about the Tangipahoa Parish, Baton Rouge Parish, Eastern District of Louisiana, and the United States of

America, and Washington D.C." No facts exist showing that the School Board Defendants had any contacts with the District of Columbia.

Turning to specific jurisdiction, the Court must conduct a two part analysis. First, the Court must determine whether jurisdiction is applicable under the state's long arm statute. *Lemon v. Kramer,* 270 F. Supp. 3d 125, 136 (D.D.C. 2017) citing *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (D.C.C. 2000). Then the Court must determine whether a finding of jurisdiction satisfies the constitutional requirement of due process. *Id.*

The District of Columbia long-arm statute provides that the District of Columbia court has personal jurisdiction over the defendant where the defendant is:

> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, **engages in** any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . .; (7) martial or parent and child relationship in the District of Columbia [if other conditions are met] . . .

D.C. Code § 13-423(a) (emphasis added). Subsection (b) further limits the application of the statute and states "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Lemon v. Kramer,* 270 F. Supp. 3d 125, 136 (D.D.C. 2017). In other words, the plaintiff's jurisdictional allegations must arise from the same conduct of which he complains.

Regarding the second prong of the Court's examination, the plaintiff must demonstrate "'minimum contacts' between the defendant and the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* citing *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *Int'l Shoe Co. v.*

*Wash.*, 326 U.S. 310, 316 (1945)). Minimum contacts must be "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987). Accordingly, the defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being sued in that state. *Id. GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The "fair warning" requirement is satisfied when a defendant purposefully directs his activities to the forum and/or its residents and the resulting litigation arises out of or related to those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In this case, the School Board Defendants are a Louisiana public school district, board members, and employees.  The TPSB only conducts business in Tangipahoa Parish, Louisiana. It maintains its central office in Amite, Louisiana. School Board meetings are similarly held in Amite, Louisiana. All alleged meetings with Dantzler necessarily occurred in Tangipahoa Parish. Defendants have no relationship with the District of Columbia.  Additionally, none of the alleged conduct falls within the basis of jurisdiction outlined in D.C. Code § 13-423(a).  Defendant transacts no business, supplies no services, and engages in no conduct within the District of Columbia.  If Defendants caused any injury to Plaintiff, which Defendants adamantly deny, that injury occurred within the State of Louisiana.  Plaintiff is undeniably a resident of Tangipahoa Parish. There are no allegations in the complaint that Plaintiff has ever resided in the District of Columbia. In short, Plaintiff has not and cannot allege that the School Board Defendants have any ties with the District of Columbia.  Therefore, Dantzler fails to demonstrate that personal jurisdiction exists.

Moreover, Dantzler cannot show that Defendants had minimum contacts with the District of Columbia; and therefore, the exercise of personal jurisdiction over defendants would violate Due Process. Dantzler has failed to allege that any relationship exists between the Tangipahoa Parish School District, its employees and the District of Columbia.  As stated above, the incidents giving rise to the causes of action occurred in Tangipahoa Parish, Louisiana. All employees that were named in the suit live in Louisiana. All documents attached to the complaint including: the Louisiana Commission on Human Rights Charge of Discrimination; Louisiana Commission Human Rights Dismissal and Notice of Rights; Correspondence to the New Orleans District Office of U.S. EEOC, Correspondence to Louisiana Commissioner of Human Rights/Office of Governor John Bel Edwards, and Correspondence to the N.A.A.C.P. concern activities related to Dantzler's employment that occurred within Tangipahoa Parish.

A very similar issue was decided in *Hicks v. Fort Wayne Cmty. Schs*, No. 08-2095 (JDB), 2009 U.S. Dist. LEXIS 151454 (D.D.C. Apr. 3, 2009). In *Hicks,* a plaintiff sued an Indiana school board for wrongful termination.  She filed suit against the Indiana School in this Court. The Court specifically found that the plaintiff had not alleged that defendant, "…transacted any business in the District of Columbia, that defendant has contracted to supply services in the District of Columbia, that defendant regularly does or solicits business in the District of Columbia, that defendant has an interest in, uses, or possesses real property in the District of Columbia, or that defendant has contracted to insure or act as surety for any agreement with a connection to the District of Columbia." Therefore, § 13-423(a)(1), (2), (3), (5), and (6) did not provide the Court with jurisdiction over defendant.

Unlike this case, the plaintiff in *Hicks* was living in Washington D.C. at the time defendant's posted notice of plaintiff's termination on a publicly available website.  The court

found that access by forum residents to a non-resident defendant's website was not enough to establish minimum contacts with the forum. *Id.* at *6.

Additionally, in *Stevens v. Bd. Of Educ. Of Kent County,* 70 F. Supp. 3d 566, (D.D.C. 2014) the plaintiff filed suit against the Board of Education of Kent County in the Superior Court of District of Columbia. The case was removed to federal court. The Board filed a motion to dismiss on the basis that the Court lack personal jurisdiction.  The Court held that the Plaintiff failed to allege any contacts that the Board maintained within the District of Columbia. The Court further stated the plaintiff had not alleged that the Board purposefully availed itself to the privilege of conducting activities within the District.  The only basis for personal jurisdiction the plaintiff alleged was that she received Social Security income from the District's Social Security region.  The Court held that the plaintiff's contact with the District of Columbia was not relevant to the defendant's contacts with the District.  The complaint was dismissed because the Court lacked jurisdiction over the Board. *Id.* at 569.

In the present matter, Dantzler has not and cannot allege that any of the requirements of § 13-423 are met in order to subject the TPSB and its employees to the jurisdiction of this Court. Additionally, Plaintiff admits in the Complaint that "all listed defendants are a[sic] resident of full age of majority of the Parish of Tangipahoa and the Parish of Baton Rouge, State of Louisiana, and a citizen of the United States of America."  The case should be dismissed for lack of personal jurisdiction.

> **2.  Even if the Court has Personal Jurisdiction, This Court Must Dismiss the Complaint Against the School Board Defendants Under Rule 12(b)(6) of the Federal Rules of Civil Procedure**
>
> **A.  Rule 12(b)(6) Legal Standard**

A court may grant a motion to dismiss for failure to state a claim where the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under the law. *Browning v. Clinton*, 352 U.S. App. D.C. 4, 292 F.3d 235, 242 (D.C. Cir. 2002). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Id.*

The facts alleged in the complaint are treated as true, and plaintiff is given the benefit of all reasonable inferences that may be inferred from the facts. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (D.D.C. Cir. 2006).  Nevertheless, the Court has directed that "[s]ome factual allegations may render success on the merits impossible and these are also accepted as true. *Pub. Citizen v. Clerk, Dist. Court,* 451 F. Spp. 2d 109, 114 (D.D.C. 2006).

The court is not required to accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Id.*  "As a governing principle, plaintiffs need not set forth a prima facie case as to each count to survive a Rule 12(b)(6) motion …but they must present facts that would establish the elements of each claim"  *Major v. Plumbers Local Union No. 5,* 370 F. Supp. 2d 118, 128 (D.D.C. 2005).

In the context of Title VII claims:

> To survive a motion to dismiss, however, a Title VII plaintiff need not plead each element of his prima facie case, but 'must allege facts that, if true, would establish the elements of each claim' of his complaint.  Therefore, 'the Court may explore the plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet his initial burden to establish a prima facie case for Title VII discrimination.' *Tressler v. AMTRAK,* 819 F. Supp. 2d 1, 5 (D.D.C. 2011).

Additionally, labels, conclusions and formulaic recitation of the elements of claims are insufficient.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

When deciding a Rule 12(b)(6) motion a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint."

*Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017). A Court may also consider documents in the public record of which the court may take judicial notice. *Id.* This includes EEOC Decisions as those decisions are official, public documents subject to judicial notice.  *Id. citing Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 28 n.2 (D.D.C. 2016).

### B.  Plaintiff Failed to Exhaust His Administrative Remedies

Plaintiff failed to exhaust his administrative remedies with respect to his claims of discrimination concerning the four promotions because he did not identify each promotion in the EEOC charge. Each discrete adverse employment action individually triggers Title VII's procedural requirements. *AMTRAK v. Morgan*, 536 U.S. 101 (2002).  The Supreme Court in *Amtrak* held that only those acts occurring within the limitations period were actionable, regardless of any connection between the earlier acts and the one they relate to acts alleged in timely filed charges.  *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137 (D.D.C. 2004). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time. *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004). This Court additionally holds that individual acts of retaliation that form the basis of retaliation claims also are included within the Supreme Court's list of discrete discriminatory acts.  Therefore, "any claim stemming from those acts must be administratively exhausted." *Coleman-Adebayo v. Leavitt,* 326 F. Supp. 2d 132, 138 (D.D.C. 2004).

Jurisprudence from this Court is clear.  Plaintiff was required to file an EEOC claim for "each incident, even when the other claims are like or related to acts alleged in a timely-filed administrative complaint." *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 308 (D.D.C. 2015) (citing *Pintro v. Wheeler*, 35 F. Supp. 3d 47, 54 (D.D.C. 2014)).  This Court notes that such pattern claims are usually brought by a class. *Greer v. Bd. of Trs. of the Univ. of the*

*D.C.*, 113 F. Supp. 3d 297, 308 (D.D.C. 2015) (citing *Hayes v. Chao*, 592 F. Supp. 2d 51, 56 (D.D.C. 2008)) and *More v. Snow*, 480 F. Supp. 2d 257, 271 n.4 (D.D.C. 2007).  Where as here, an individual brings a disparate treatment case, the plaintiff is prohibited from arguing that the pattern and practice exception applies. *Id.*

At the outset, plaintiff appears to complain of his failure to be promoted to the Director of Transportation.  He specifically mentions that such a position was given to defendant, Byron Muse.  Defendants note that as explained the U.S. Fifth Circuit in *Moore,* 771 Fed Appx. at 542, the Director of Transportation position became available in 2016.  Plaintiff fails to demonstrate that he filed any administrative complaint resulting from this hire.  Therefore, all allegations stemming from his application for the Director of Transportation position should be dismissed on the basis that he failed to exhaust his administrative remedies.

Regarding the remaining allegations, Plaintiff filed one Charge of Discrimination alleging continuing discrimination and retaliation from October 2018 to March of 2019 concerning his applications for promotions.  Importantly, no specific jobs were outlined in the Charge of Discrimination. Additionally, no specific dates were provided in the Charge of Discrimination. The complaint and the charge are both devoid of any allegations that pattern of events occurred as the company's standard operating procedure. Moreover, as outlined above, the TPSB is still under a Court desegregation order which controls the racial makeup of its administrative offices and is intimately monitored by the CCO and the Court.

In the complaint, Plaintiff alleges that he was not promoted for three Field Coordinator Positions that were given to two white females and one black female. He also alleges that he was retaliated against for speaking out about discriminatory and unfair labor practices at the School District. In the complaint, no dates whatsoever are given relating to Plaintiff's application for the

various positions. Plaintiff failed to exhaust his administrative remedies concerning his applications for each Field Coordinator Position. The law is clear that a discrete act such as the failure to promote occurs at a definite time. Each discrete act triggered the procedural requirements of Title VII. The Charge of Discrimination fails to identify any discrete act and instead claims that he "applied for several promotional positions." Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. The complaint should be dismissed.

### C. Plaintiff Fails to State a Claim for Gender Discrimination

Plaintiff's claims for gender discrimination fail as a matter of law and are not adequately pled in the complaint. The plaintiff, as a male, "is a member of a historically favored group," *Khin Maung Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 46 (D.D.C. 2007) citing *Bell v. Runyon*, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 16, 1997); *Bryant v. Leavitt*, 475 F. Supp. 2d 15, No. 05-250 (GK), 2007 U.S. Dist. LEXIS 11768, 2007 WL 530021, at *7 (D.D.C. Feb. 22, 2007). Therefore, he does not belong to a protected class. *Id*. Accordingly, a prima facie case of gender discrimination may be established only where it is shown that background circumstances support an inference of discrimination. *Bell*, 1997 U.S. Dist. LEXIS 10909, at *4; *see also Bryant v. Leavitt*, No. 05-250 (GK), 2007 U.S. Dist. LEXIS 11768, 2007 WL 530021, at *7 (D.D.C. Feb. 22, 2007). The types of evidence that can constitute "background circumstances" are of two types: (1) evidence indicating that an employer has some reason or inclination to discriminate against males, and (2) "evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993). Stated differently, plaintiff must present some facts to suggest that defendant is "one of those unusual employers" that discriminates against the majority group. *Bell v. Runyon,* 1997 U.S. Dist. LEXIS 10909.

17

In this case, plaintiff makes a conclusory allegation concerning the alleged gender discrimination without any facts to suggest background circumstances to support an inference of discrimination. All allegations of gender discrimination should be dismissed.

### D.  The Complaint Fails to State a Claim for Conspiracy

Plaintiff alleges that defendants conspired to circumvent his EEOC complaint against the TPSB.  Such an allegation of conspiracy involving the deprivation of one's constitutional rights is generally brought through a § 1985 action.  Plaintiff generally references §1985 at p. 3 of his complaint.  Section 1985(3) prohibits conspiracies to interfere with the civil rights of individuals or classes of individuals. *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991). The scope of §1985(3) is limited by the condition that such conspiracies must be motivated by some class based, invidiously discriminatory animus. *Id.* "This requirement is to be read narrowly to avoid converting Section 1985 into general federal tort law." *McCreary v. Heath*, No. 04-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005).

To state a claim under §1985(3), Plaintiff is required to allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person of the equal protection of the laws (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or deprivation of any right or privilege of a citizen of the United States. *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009), quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987).

To survive a motion to dismiss a §1985 claim, plaintiff must set forth more than conclusory allegations of an agreement. *White v. United States,* 791 F. Supp. 2d 156, 162 (D.D.C. 2011). Additionally Dantzler must allege in the Complaint the existence of "events, conversations, or documents indicating there was an agreement between the defendants. *White v.*

*United States*, 791 F. Supp. 2d 156, 162 (D.D.C. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Atherton,* 567 F.3d at 688, citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009).

Plaintiff additionally generally alleges that "the defendants has [sic] shown an intentionally continuing, retaliatory, conspiracy criminal pattern that falls under the RICO act." Compl. 12. A RICO conspiracy allegation requires pleading the existence of at least one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy. *Barlow v. McLeod*, 666 F. Supp. 222, 225 (D.D.C. 1986). (Plaintiff additionally fails to state a claim under RICO as no predicate acts are included in the petition.) *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264, 310 U.S. App. D.C. 409 (D.C. Cir. 1995), quoting *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

In this case, Dantzler has failed to allege any facts suggesting that any conspiracy existed to violate his civil rights or that defendants engaged in a RICO conspiracy. Specifically, the complaint is conclusory and fails to address the existence of any events, conversations, or documents which show an agreement between the defendants. The complaint further fails to show any overt acts by the defendants. All conspiracy claims should be dismissed.

To the extent that plaintiff maintains that he has an actionable state law claim of conspiracy, the Court should deny supplemental jurisdiction over any state law conspiracy claims. See *Republic of Kaz. v. Stati,* 380 F. Supp. 3d 55, 65 (D.D.C. 2019). Under 28 U.S.C. § 1367(c) a district court "may decline to exercise supplemental jurisdiction over a claim" when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### E. Plaintiff Fails to State a Claim Against TPSB Employees and Officers made in Their Individual Capacities

Title VII does not provide for individual liability.  *Smith v. Janey*, 664 F. Supp. 2d 1, 8 (D.D.C. 2009). *citing Howard v. Fenty*, 580 F. Supp. 2d 86, 92 (D.D.C. 2008) (noting that there is no individual liability under either Title VII or the ADA) Although a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer. *Gary v. Long*, 313 U.S. App. D.C. 403, 59 F.3d 1391, 1399 (1995) citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (holding that "relief granted under Title VII is against the employer, not individual employees whose actions constituted a violation of [Title VII]" (emphasis in original)). Dismissal of Title VII claims against supervisory employees sued in their individual capacities is proper. *Id.*

### F.  Plaintiff Failed to Follow the Proper Procedures to Object or Attempt to Enforce Order 866.

Plaintiff vaguely alleges that "he believes that he has a civil rights claim under the Joyce Marie Moore, et al versus the Tangipahoa Parish School Board Civil Action Number 65-15559." However, plaintiff does not allege that he filed a grievance with the COO in order to challenge any of the alleged hiring decisions. The vague reference to the Desegregation case in this matter is insufficient to create a cause of action.  All claims purporting to raise a cause of action for non-enforcement of the Desegregation Order should be dismissed for failure to state a claim.

### 3.  The Court Lacks Subject Matter Jurisdiction

### A.  Standard on Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Before a court can rule on the merits of a claim, subject matter jurisdiction must be established. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 437 U.S. App. D.C. 270, 279, 896 F.3d 501, 510 (2018).  Where a motion to dismiss alleges that subject matter jurisdiction is lacking, the plaintiff bears the burden of proof establishing that the court has subject matter

jurisdiction. *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 28 (D.D.C. 2012); citing *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). As more fully outlined below, Plaintiff cannot show that this Court has subject matter jurisdiction over the claims against Defendants.

### B.  The Court Lacks Subject Matter Jurisdiction Regarding the Requested Writ of Mandamus.

The Court does not have subject matter jurisdiction against the Defendants to issue a writ of mandamus.  28 U.S.C § 1361 and 28 U.S.C. §1651 govern writs of mandamus.  These statutes allow the issuance of a writ of mandamus against agencies of the U.S. Government or the U.S. Supreme Court.

28 U.S.C. § 1361 confers jurisdiction on the district courts to entertain suits "in the nature of' mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The term agency is statutorily defined to include "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451. Accordingly, Courts interpret §1361 to be a source of jurisdiction for the court to exercise writs of mandamus direct to employees of the Executive Branch. §1361 is a source of jurisdiction for district courts to exercise writs of mandamus directed to employees of the Executive Branch. *See, United States v. Choi*, 818 F.Supp.2d 79 (D. D.C. 2011) (citing *Trackwell v. United States Government*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970); *King v. Russell,* 963 F.2d 1301, 1304 (9th Cir. 1992).

Plaintiff does not allege that the School Board Defendants are an independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest. Instead, it cannot be disputed

that the Tangipahoa Parish School Board is a political subdivision of the State of Louisiana. *Brown v. Coregis Ins. Co.*, 99-0048 (La. App. 1 Cir. 02/18/00); 752 So.2d 347, 354. Moreover, its employees and board members are not members of the Executive Branch. This Honorable Court is prohibited from issuing a writ of mandamus under §1361 to the School Board Defendants.

Plaintiff additionally cites 28 U.S.C. § 1651 as additional authority for the issuance of a writ in this case. The act specifically provides:

> **(a)** The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

> **(b)** An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

"The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." Therefore, "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Abdulla Thani Faris Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 195 (D.D.C. 2005). In this matter, plaintiff brings claims under Title VII, R.I.C.O., and purported conspiracy claims under §1985. This is not a case where the Court's residual authority should be invoked. The Court lack mandamus authority over Defendants.

## III. Conclusion

For the forgoing reasons, Defendants respectfully requests that their Motion to Dismiss be granted in all respects, that Plaintiff's Complaint and First Amended Complaint be dismissed with prejudice in its entirety at Plaintiffs' sole costs.

Dated: October 19th, 2020                     Respectfully submitted,

**WASHINGTON, DISTRICT OF COLUMBIA
BY COUNSEL**

___/s/_____
Ashley E. Bass (LA Bar #24364)
Admitted *pro hac vice*
CASHE COUDRAIN & BASS
Post Office Drawer 1509
Hammond, Louisiana  70404
Telephone:  (985) 542-6848
Fax:  (985) 542-9602
aeb@ccbattorneys.com

___/s/_____
Patrick M. Sullivan (D.C. Bar No. 1018119)
DICKINSON WRIGHT PLLC
1825 Eye St., N.W. Suite 900
Washington, D.C.  20008
Telephone: (202) 659-6929
psullivan@dickinson-wright.com